# STATE OF MICHIGAN

# COURT OF APPEALS

---

THE GROSSE POINTE LAW FIRM, PC, also
known as LAW OFFICE OF ALAN BROAD, PC,

      Plaintiff-Appellant,

v

JAGUAR LAND ROVER NORTH AMERICA,
LLC, ROVER MOTORS OF FARMINGTON
HILLS, LLC, doing business as LAND ROVER
FARMINGTON HILLS, JAGUAR AND LAND
ROVER OF MACOMB, LLC, doing business as
JAGUAR LAND ROVER OF LAKESIDE, and
ELDER AUTOMOTIVE GROUP,

      Defendants-Appellees.

FOR PUBLICATION
September 22, 2016
9:10 a.m.

No. 326312
Macomb Circuit Court
LC No. 2012-005249-CK

---

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

GADOLA, J.

      This case requires us to examine the distinction between warranties and remedies under Michigan's Uniform Commercial Code (UCC), MCL 440.1101 *et seq*. Plaintiff appeals by leave granted[1] orders granting the motions for summary disposition filed by defendants Jaguar Land Rover North America, LLC (JLRNA), Rover Motors of Farmington Hills, LLC (Rover Motors), and Jaguar and Land Rover of Macomb, LLC (Land Rover of Macomb). For the reasons cited in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND FACTS

---

[1] *The Grosse Pointe Law Firm, PC v Jaguar Land Rover North America*, unpublished order of the Court of Appeals, entered September 17, 2015 (Docket No. 326312). This Court's order granting plaintiff leave to appeal limited the appeal to "the issue of whether the circuit court erred by dismissing plaintiff's claim for breach of a warranty to repair based on the running of the statute of limitations." *Id.*

Plaintiff purchased a vehicle from Rover Motors on December 30, 2005. The vehicle was manufactured by JLRNA. At the time of purchase, JLRNA issued a document titled "Vehicle Warranties," which stated the following:

> Land Rover North America, Inc., warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, repairs required to correct defects in factory-supplied materials or factory workmanship will be performed without charge upon presentment for service; any component covered by this warranty found to be defective in materials or workmanship will be repaired, or replaced, without charge.

> * * *

> The warranty period for the vehicle begins on the date of the first retail sale, or on the date of entry into demonstrator service. The basic warranty period is for four (4) years or until the vehicle has been driven 50,000 miles, whichever occurs first.

Plaintiff brought the vehicle to Rover Motors and Land Rover of Macomb for repairs several times throughout its ownership. In 2011 and 2012, plaintiff attempted to negotiate for JLRNA to repurchase the vehicle, but the parties failed to reach an agreement regarding the price. On November 28, 2012, plaintiff traded in the vehicle and filed the instant lawsuit.

In its lawsuit, plaintiff raised, among others, claims for breach of warranty and violation of the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq*. Defendants filed a motion for summary disposition under MCR 2.116(C)(7),[2] arguing that plaintiff's breach of warranty claims were time-barred by MCL 440.2725, which provides a four-year limitations period for claims involving breach of any contract for the sale of goods. MCL 440.2725(2) states that a breach of warranty claim accrues "when tender of delivery is made, except . . . where a warranty explicitly extends to future performance of the goods . . . ." MCL 440.2725(2). Plaintiff responded that "[p]romises to repair or replace refer to the future performance of the warrantor manufacturer, not to the future performance of the vehicle," so a claim for breach of a repair or replace warranty accrues when the warrantor fails to repair a defect, rather than on tender of delivery. The trial court granted defendants' motion under MCR 2.116(C)(7), concluding that plaintiff's claims were time-barred under MCL 440.2725. In doing so, the court acknowledged that other jurisdictions "recognize[] a separate repair and replace limited warranty that accrues at the time the repair is attempted," but reasoned that without precedential caselaw on the subject in Michigan, plaintiff's claims accrued on tender of delivery.

---

[2] JLRNA filed the motion for summary disposition under MCR 2.116(C)(7), to which Rover Motors and Land Rover of Macomb concurred.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *King v Reed*, 278 Mich App 504, 513; 751 NW2d 525 (2008). MCR 2.116(C)(7) "permits summary disposition where the claim is barred by an applicable statute of limitations." *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). When reviewing such a motion, we "must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). If the parties submit any affidavits, depositions, admissions, or other documentary evidence, we "consider them to determine whether there is a genuine issue of material fact." *Id.* at 429. Only if no facts are in dispute and reasonable minds could not differ regarding the legal effect of those facts should the trial court grant a motion for summary disposition under MCR 2.116(C)(7). *Id.*

We also review questions of statutory interpretation de novo. *Grimes v Mich Dep't of Transp*, 475 Mich 72, 76; 715 NW2d 275 (2006). When construing statutory provisions, courts must interpret the words of the statute in light of their ordinary meaning and read them in context. *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012). Likewise, courts must "give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

## III. DISCUSSION

Article 2 of the UCC governs the relationship between parties involved in contracts for the sale of goods. MCL 440.2102; *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512, 519-520; 486 NW2d 612 (1992). MCL 440.2725 provides the limitations period for claims involving obligations arising under Article 2, and states, in pertinent part, the following:

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Therefore, a cause of action for breach of a sales contract under Article 2 accrues when the breach occurs, unless the cause of action is for breach of warranty, in which case the claim accrues either on tender of delivery or, if the warranty explicitly extends to future performance of the goods, when the breach is or should have been discovered.

The trial court concluded that the repair or replace provision at issue in this case constituted a warranty for purposes of MCL 440.2725(2), but determined that the warranty did

-3-

not "explicitly extend[] to future performance of the goods," so plaintiff's cause of action accrued on tender of delivery. For a warranty to extend to future performance, it must expressly define the future period to which it applies. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 57; 649 NW2d 783 (2002). Further, it must explicitly provide that the goods warranted will be free from defects for the specified period. See *Executone Business Sys Corp v IPC Communications, Inc*, 177 Mich App 660, 667-669; 442 NW2d 755 (1989) (holding that a warranty extended to future performance when it "explicitly provided freedom 'from defects for a period of one year from the date of shipment . . . .' ").

The repair or replace provision in this case does not expressly state that plaintiff's vehicle will be free from defects, but rather states that the manufacturer will repair or replace any defects that arise during the specified time period. Accordingly, we agree with the trial court that the provision does not "explicitly extend[] to future performance of the goods." However, the question remains whether a repair or replace provision, standing alone, is a "warranty" for purposes of MCL 440.2725(2).

In *Centennial Ins Co v Gen Electric Co*, 74 Mich App 169, 170-171; 253 NW2d 696 (1977),[3] this Court seemingly treated a repair or replace provision in a contract for the sale of goods as a "warranty" within the scope of Article 2, but not as a warranty extending to future performance for purposes of MCL 440.2725(2). In *Centennial*, the buyer brought a breach of warranty claim against the seller more than four years after receiving the goods at issue. *Id.* at 170-171. The buyer argued that the limitations period for bringing its claim had not expired because the warranty contained a one-year repair or replace provision, which fell within the exception of MCL 440.2725(2) for warranties "explicitly extend[ing] to future performance of the goods." *Id.* at 171. The contract provision at issue in *Centennial* stated the following:

> The Company warrants to the Purchaser that the equipment to be delivered hereunder will be free from defects in material, workmanship and title and will be of the kind and quality designated or described in the contract. . . . If it appears within one year from the date of shipment by the Company that the equipment delivered hereunder does not meet the warranties specified above and the Purchaser notifies the Company promptly, the Company shall thereupon correct any defect, including non-conformance with the specifications, at its option, either by repairing any defective part or parts or by making available at the Company's plant, a repaired or replacement part. [*Id.* at 171 n 1.][4]

Rejecting the buyer's claim, this Court held that the one-year repair or replace provision did not constitute "a warranty for future performance, but rather, *a specification of the remedy to which*

---

[3] We note that *Centennial* is not binding on this Court. See MCR 7.215(J)(1) (providing that cases decided by this Court before November 1, 1990, do not have precedential value).

[4] The *Executone* Court distinguished *Centennial* by noting that the provision in *Centennial* did not "explicitly warrant that the goods would be free from defects for a specified period of time," while the warranty provision in *Executone* "explicitly provided freedom 'from defects for a period of one year from the date of shipment . . . .' " *Executone*, 177 Mich App at 668.

*[the] buyer is entitled* should breach be discovered within the first year." *Id.* at 171 (emphasis added). Accordingly, the Court held that the buyer's claim was time-barred by MCL 440.2725. *Id.* at 172.

The *Centennial* Court properly identified a distinction between a warranty extending to future performance, which promises that goods will be free from defects for a specified period of time, and a promise to repair or replace, which provides a remedy if any defects arise. However, the Court did not specifically address whether a repair or replace promise, standing alone, constitutes a "warranty" for purposes of MCL 400.2725.[5]

Defendants argue that a promise to repair or replace is a warranty for purposes of MCL 440.2725(2) because it falls within the definition of "express warranty" provided by MCL 440.2313. MCL 440.2313(1) states that express warranties by the seller are created in the following ways:

> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) A description of the goods which is made part of the bargain creates an express warranty that the goods shall conform to the description.

> (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Defendants argue that the repair or replace provision in this case falls within the definition of "express warranty" under MCL 440.2313(1)(a) because it contains a promise to repair or replace made by JLRNA to plaintiff that relates to the vehicle and formed part of the basis of the sale. However, MCL 440.2313(1)(a) goes on to state that an applicable affirmation of fact or promise "creates an express warranty that the *goods shall conform to the affirmation or promise.*" (Emphasis added.)[6] Goods cannot "conform" to a promise to repair or replace because such a promise says nothing about the character or quality of the goods, but rather identifies a remedy if the buyer determines that the goods are defective. Put another way, an unadorned promise to repair or replace a defective part is not a promise concerning the quality or performance of the goods to which the goods can "conform." A promise to repair or replace instead provides

---

[5] Indeed, the seller in *Centennial* arguably did create an express warranty by making a promise that the goods would be free from defects, albeit not for a specified period of time, in addition to a promise to repair or replace defective parts. See MCL 440.2313(1)(a). No such language appears in the contract provision at issue in this case.

[6] Again, when interpreting statutes, we must give effect to every phrase, clause, and word in the statute, must read the statutory language in context, and must construe the statute as a whole. *Potter v McLeary*, 484 Mich 397, 411; 774 NW2d 1 (2009).

nothing more than a remedy for a product that breaks. Accordingly, we cannot agree that the repair or replace provision in this case is an express warranty under MCL 440.2313(1)(a).

In addition to express warranties under MCL 440.2313, which parties may include as a term of a contract of sale, Article 2 also defines a wide range of implied warranties that arise by operation of law. See *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 638; 774 NW2d 332 (2009).[7] Although the parties do not suggest that the repair or replace provision at issue in this case is an implied warranty under Article 2, what all of the warranties defined under Article 2, express or implied, have in common is that they relate to the character or quality of the goods, rather than to the remedies that are available should a buyer discover that the goods are defective.[8] In contrast, a promise to repair or replace says nothing about the quality of the goods themselves, but rather identifies a specific *remedy* available to the buyer should a defect arise.

Accordingly, we adopt the approach that promises to repair or replace defective goods are contractual promises under Article 2, but are not warranties.[9] To conclude otherwise would

_____

[7] The implied warranties under Article 2 are as follows: The implied warranty of title and against infringement, which provides that "title conveyed shall be good, and its transfer rightful" and that "the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge," MCL 440.2312; the implied warranty of merchantability, which provides that goods must (a) "pass without objection in the trade under the contract description, (b) "in the case of fungible goods, are of fair quality within the description," (c) "are fit for the ordinary purpose for which the goods are used," (d) "run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved," (e) "are adequately contained, packaged, and labeled as the agreement may require," and (f) "conform to the promises or affirmations of fact made on the container or label if any," MCL 440.2314; and the implied warranty of fitness for a particular purpose, which provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose," MCL 440.2315.

[8] See Garvin, *Uncertainty and Error in the Law of Sales: The Article Two Statute of Limitations*, 83 B U L Rev 345, 379 (2003) ("All [express and implied warranties] go to the quality of the goods at tender. None goes to the remedies, which come about only if a warranty is breached."); Dewitt, *Action Accrual Date for Written Warranties to Repair: Date of Delivery or Date of Failure to Repair?* 17 U Mich J L Reform 713, 722 n 35 (1983-1984) ("A repair provision relates not to the goods and their quality, but to the manufacturer and its obligation to the purchaser.").

[9] Defendants cite *Kelynack v Yamaha Motor Corp*, 152 Mich App 105; 394 NW2d 17 (1986), *Rust-Pruf Corp v Ford Motor Co*, 172 Mich App 58; 431 NW2d 245 (1988), *Severn v Sperry Corp*, 212 Mich App 406; 538 NW2d 50 (1995), and *Computer Network, Inc v AM Gen Corp*, 265 Mich App 309; 696 NW2d 49 (2005), for the proposition that "Michigan case law is clear that warranties substantially similar to [the repair or replace provision at issue in this case] are

-6-

require us to reach "the perverse conclusion that the statute of limitations began to run before the breach occurred." *Baker v DEC Int'l*, 458 Mich 247, 249 n 4; 580 NW2d 894 (1998) (citation and quotation marks omitted).[10] Such a conclusion would also render repair or replace promises extending beyond four years meaningless, as any claim for breach of the promise would be time-barred four years after the tender of delivery, and would further give sellers an incentive to stall repairs until the limitations period expired. Because remedial promises are not warranties, a claim for breach of such a promise "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." MCL 440.2725(2). It seems unremarkable to state that a promise to repair or replace defective goods is breached when the seller either fails or refuses to repair or replace the defect, and that the statute of limitations begins to run at that time. Therefore, the trial court erred by concluding that plaintiff's claim accrued on tender of delivery.

For the same reasons, the trial court erred by dismissing plaintiff's MMWA claim. Although plaintiff's claim for breach of the promise to repair or replace is not truly a "breach of warranty" claim under Article 2 for purposes of MCL 440.2725(2), the promise is a "written

_____

express limited warranties under MCL 440.2313." We first note that, contrary to defendants' assertions, *Kelynack* and *Rust-Pruf* are not binding on this Court. MCR 7.215(J)(1). Although these cases involve repair or replace provisions included in contracts for the sale of goods, none of the cases address the issue we are faced with today, which is whether such remedial promises, standing alone, constitute express warranties under MCL 440.2313 or fall within the breach of warranty accrual provision of MCL 440.2725(2). Further, like the approach we adopt today, these cases explain that repair or replace promises relate to the *remedies* available to a buyer who discovers a defect in purchased goods, and do not suggest that such promises relate to the quality of the goods themselves, which is necessary to create an express warranty under MCL 440.2313(1)(a). See *Kelynack*, 152 Mich App at 115 (characterizing a repair or replace clause as "an exclusive remedy provision contained in a warranty"); *Rust-Pruf*, 172 Mich App at 61-62 (holding that a party could not sustain a products liability action against a vehicle manufacturer when the rights that could be enforced by the buyer for breach of an express warranty were set forth in the sales contract); *Severn*, 212 Mich App at 409 (stating that a purchased good was covered by a "two-year written warranty under which defendant's obligations were limited to repairing defects or . . . replacing any parts that in defendant's judgment were defective"); *Computer Network*, 265 Mich App at 314 (noting that a promise to repair or replace in a "limited express warranty" constitutes a remedy to which the parties agreed).

[10] Defendants argue that our approach requires us to ignore the Supreme Court's holding in *Baker*, 458 Mich 247. We disagree. In *Baker*, the plaintiffs brought an implied warranty claim under the UCC more than four years after their purchased equipment was delivered, but arguably less than four years after the equipment was installed. *Id.* at 250. The issue in *Baker* was whether tender of delivery occurred, such that the statute of limitations began to run on plaintiffs' breach of warranty claim, at the time of delivery or installation. *Id.* Our Supreme Court held that "where the seller is obligated to install goods under a contract, tender of delivery does not occur until installation is completed." *Id.* at 249. Accordingly, *Baker* does not address the issue we are faced with today, and its holding does not dictate a contrary result.

warranty" for purposes of the MMWA. See 15 USC 2301(6)(B). The MMWA specifically defines written warranties to include the following:

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking. [15 USC 2301(6).]

The MMWA does not provide a limitations period for filing a breach of written warranty claim. See *Mydlach v DiamlerChrysler Corp*, 226 Ill 2d 307, 316; 314 Ill Dec 760; 875 NE2d 1047 (2007) ("Although the [MMWA] provides a private right of action for breach of a written warranty, the Act does not contain a limitations provision for such an action."). When a federal statute fails to specify a limitations period, "courts apply the most closely analogous statute of limitations under state law." *DelCostello v Int'l Brotherhood of Teamsters*, 462 US 151, 158; 103 S Ct 2281; 76 L Ed 2d 476 (1983). The most analogous statute of limitations is found in Article 2 of the UCC, as codified by various state statutes. See *Snyder v Boston Whaler, Inc*, 892 F Supp 955, 960 (WD Mich, 1994). Therefore, MCL 440.2725 also applies to plaintiff's MMWA claim, and the trial court erred by concluding that plaintiff's MMWA claim accrued on tender of delivery. Accordingly, we reverse the trial court's order granting defendants summary disposition on plaintiff's warranty claims and remand this matter to the trial court for further proceedings.[11]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, plaintiff may tax costs. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Mark J. Cavanagh

---

[11] We decline to address plaintiff's equitable estoppel claim because it was not part of the issue for which we granted leave to appeal. Therefore, the issue is not properly before this Court.